643 S.E.2d 118

**In the Matter of the CARE AND TREATMENT OF Renauld L. BROWN, Respondent,**

**v.**

**The STATE, Appellant.**

**No. 4219.**

Court of Appeals of South Carolina.

Submitted March 1, 2007.

Decided March 19, 2007.

612

Attorney General Henry Dargan McMaster, Chief Deputy Attorney General John W. McIntosh, Assistant Attorney General Deborah R.J. Shupe, Assistant Attorney General Brandy A. Duncan, all of Columbia, for Appellant.

Renauld L. Brown, of Spartanburg, Pro Se, Respondent.

ANDERSON, J.:

The State appeals the circuit court's order finding the State had not shown probable cause to believe Renauld L. Brown is a sexually violent predator. We reverse and remand.[1]

## FACTUAL/PROCEDURAL BACKGROUND

At approximately 6:00 a.m., on September 10, 2000, Renauld L. Brown was caught peeping in the windows of a thirty-six year old woman's home. In November of that year, Brown was indicted on one count of eavesdropping/peeping tom for the incident. Thereafter, Brown was seen looking into the same victim's windows on January 13, 2001 at approximately 3:00 a.m., and again on April 10, 2001 at 4:00 a.m. On October 10, 2001, Brown was convicted of one count of stalking and two counts of entering premises after notice in connection with the 2000 and two 2001 incidents. He was sentenced to thirty days with credit for time served.

On the evening of October 12, 2001, two days after being released from jail, Brown was seen peeping into the windows of the same woman's abode. While his victim was on the telephone calling police, Brown attempted to break down her back door. He was subsequently apprehended and charged with voyeurism, stalking, and attempted burglary. On De-

---

1. We decide this case without oral argument pursuant to Rule 215, SCACR.

cember 19, 2002, Brown was convicted on all three charges and sentenced to three years suspended to 433 days (time served) for voyeurism, one year for stalking, and five years suspended to 433 days (time served) for attempted burglary.

On January 13, 2003, twenty-five days after being released from jail on the December 2002 convictions, Brown was seen shortly before midnight peeping into the windows of a house belonging to the sister of the victim of his earlier offenses. When police arrived, Brown attempted to flee but was captured after a brief foot chase. After he was arrested and placed in the patrol car, Brown kicked one of the officers and began kicking the vehicle's doors. He was charged with eavesdropping/peeping tom and resisting arrest.

On January 7, 2005, Brown pled guilty to voyeurism and was sentenced to three years suspended to thirty months and three years probation, with credit for time served. The sentencing judge made a specific finding that the offense should be considered a sexually violent act under the South Carolina Sexually Violent Predator Act (S.C.Code Ann. §§ 44–48–10 to 44–48–170 (Supp.2006)).

Brown arrived at the South Carolina Department of Corrections on January 10, 2005, and was released on probation on January 11, 2005. On June 4, 2005, less than six months after being released on probation, Brown was seen looking into the windows of yet another home. The house belonged to a twenty-eight year old female, unrelated to his prior victims. Brown pled guilty to one count of eavesdropping/peeping tom on June 29, 2005, and was sentenced to eighteen months incarceration, with the special condition that he receive mental health counseling.

Pursuant to the Sexually Violent Predator Act, and particularly in light of the fact he had a previous qualifying offense, prior to Brown's release from the Department of Corrections, the multidisciplinary committee reviewed his case. On October 24, 2005, the committee found probable cause to believe Brown to be a sexually violent predator. On November 22, 2005, the prosecutor's review committee also found probable cause to believe Brown is a sexually violent predator and referred the case for further proceedings under the Act.

On December 2, 2005, the State commenced an action seeking to commit Brown for long term control, care, and treatment. The circuit judge found the State's petition set forth sufficient probable cause to believe Brown to be a sexually violent predator and ordered his detention pending a probable cause hearing.

The matter was called for a probable cause hearing in the circuit court on February 15, 2006. Brown was present with counsel. The state argued Brown's history indicated he has a mental abnormality that causes him serious difficulty in controlling his deviant behavior. The State further averred Brown's lack of sex offender treatment of any kind make him a significant risk to re-offend if not confined for long-term control, care and treatment. In light of the evidence indicating Brown's inability to control his behavior and his significant risk to re-offend, the State asked the circuit court to find probable cause and order that Brown be evaluated by a qualified expert pursuant to the Code.

Brown argued that even though his conduct was against the law, he had not committed an act of violence, and therefore, the State could not show probable cause that he would commit future acts of sexual violence.

During the proceeding, the circuit court stated:

[I]t's not like he's [Brown] just oblivious to the fact that [his offenses] ought to be considered some sort of deviant behavior.

. . .

He ought to have sense enough to know he needs counseling based upon his prior behavior. And if he had that treatment or that counseling at his request, it might be that the state wouldn't even be here with this petition today, you see. That's one concern they have, is that he's not received any treatment for his obvious misbehavior and it's likely that it's needed, and that's likely to be true. And therefore I say he ought to understand that just based on his prior behavior and his difficulties. That's got nothing to do with probable cause.

The circuit court dismissed the action, finding the State had not established probable cause to believe Brown is a sexually

violent predator. The entire substantive body of the judge's order read:

> This matter came before this Court for hearing on the petition of the petitioner, pursuant to S.C.Code Ann. Section 44–48–80, for the Court to determine whether probable cause exists to believe that the respondent is a sexually violent predator as defined in S.C.Code Ann. Section 44–48–30. After a consideration of the showing made this Court finds that the Attorney General has failed to establish the existence of probable cause to believe that the respondent is a sexually violent predator and therefore the petition is dismissed with prejudice.

### STANDARD OF REVIEW

"On review, the appellate court will not disturb the hearing count's finding on probable cause unless found to be without evidence that reasonably supports the hearing court's finding." *In re Care and Treatment of Tucker*, 353 S.C. 466, 470, 578 S.E.2d 719, 721 (2003); *see also In re Treatment and Care of Luckabaugh*, 351 S.C. 122, 131, 568 S.E.2d 338, 342 (2002) (citing *Townes Assocs., Ltd. v. City of Greenville*, 266 S.C. 81, 221 S.E.2d 773 (1976)) (on appeal of a non-jury law case, the findings of fact will not be disturbed unless found to be without evidentiary support). In an appeal regarding sufficiency of the evidence in a sexually violent predator case, we may only reverse the trial court if there is no evidence to support the trial judge's ruling. *In re Care and Treatment of Harvey*, 355 S.C. 53, 59, 584 S.E.2d 893, 896 (2003) (citing *In re Matthews*, 345 S.C. 638, 646, 550 S.E.2d 311, 315 (2001)). In other words, this court is concerned with the existence of evidence, not its weight. *Id.*

### LAW/ANALYSIS

South Carolina's Sexually Violent Predator Act ("SVP Act" or "Act"), S.C.Code Ann. §§ 44–48–10 to 44–48–170 (Supp. 2006), provides for the involuntary civil commitment of sexually violent predators who are "mentally abnormal and extremely dangerous." S.C.Code Ann. § 44–48–20 (Supp.2006). The Act is not intended to be punitive in nature. The quiddity of the act is to: (1) meet the special needs of sexually violent

predators; (2) address the significant likelihood they will engage in repeated acts of sexual violence if not treated for their mental conditions; and (3) assess the risks requiring their involuntary civil commitment in a secure facility for long-term control, care, and treatment. S.C.Code Ann. § 44–48–20 (Supp.2006). Noting "the nature of the mental conditions from which sexually violent predators suffer and the dangers they present," our General Assembly found "it is necessary to house involuntary committed sexually violent predators in secure facilities separated from persons involuntarily committed under traditional civil commitment statutes." S.C.Code Ann. § 44–48–20 (Supp.2006).

The SVP Act defines a "sexually violent predator" as a person who: "(a) has been convicted of a sexually violent offense; and (b) suffers from a mental abnormality or personality disorder that makes the person likely to engage in acts of sexual violence if not confined in a secure facility for long-term control, care, and treatment." S.C.Code Ann. § 44–48–30(1) (Supp.2006).

Commitment of someone under the SVP Act typically begins when a person convicted of a sexually violent offense is scheduled to be released from custody. *See* S.C.Code § 44–48–40(A) (Supp.2006). When a person has been imprisoned for a sexually violent offense, law requires that the agency with jurisdiction over that person give notice to both the Attorney General and a multidisciplinary team specially designed to evaluate the particular offender. *Id.* Typically, such notice must be provided in writing at least one hundred eighty days prior to the person's release. *See* § 44–48–40(A)(1) (Supp.2006).

The multidisciplinary team must consist of: "(1) a representative from the Department of Corrections; (2) a representative from the Department of Probation, Parole and Pardon Services; (3) a representative from the Department of Mental Health who is a trained, qualified mental health clinician with expertise in treating sexually violent offenders; (4) a retired judge appointed by the Chief Justice who is eligible for continued judicial service pursuant to Section 2–19–100; and (5) an attorney with substantial experience in the practice of criminal defense law to be appointed by the Chief Justice to

serve a term of one year." S.C.Code Ann. § 44–48–50 (Supp. 2006). This team reviews the person's records to determine if he or she satisfies the definition of a sexually violent predator. *Id.* If the multidisciplinary team determines that the person meets the definition, the body forwards its assessment and all relevant records to a prosecutor's review committee. *Id.*

The prosecutor's review committee then "determine[s] whether or not probable cause exists to believe the person is a sexually violent predator." S.C.Code Ann. § 44–48–60 (Supp. 2006). In additional to the records and reports provided by the multidisciplinary team, the committee must consider any information provided by the circuit solicitor who originally prosecuted the person. *Id.*

If the prosecutor's review committee finds probable cause exists to believe the person is sexually violent predator, the Attorney General must file a petition asking the court to make a probable cause determination.

> When the prosecutor's review committee has determined that probable cause exists to support the allegation that the person is a sexually violent predator, the Attorney General must file a petition with the court in the jurisdiction where the person committed the offense and must notify the victim that the committee found that probable cause exists. The Attorney General must also notify the victim of the time, date, and location of the probable cause hearing before the court. The petition, which must be filed within thirty days of the probable cause determination by the prosecutor's review committee, must request that the court make a probable cause determination as to whether the person is a sexually violent predator. The petition must allege that the person is a sexually violent predator and must state sufficient facts that would support a probable cause allegation.

S.C.Code Ann. § 44–48–70 (Supp.2006).

"Upon filing of a petition, the court must determine whether probable cause exists to believe that the person named in the petition is a sexually violent predator." S.C.Code Ann. § 44–48–80(A) (Supp.2006). The probable cause hearing is required within seventy-two hours after the person is taken into custody. S.C.Code Ann. § 44–48–80(B) (Supp.2006). At the hearing, the law instructs the court to: "(1) verify the detainee's

identity; (2) receive evidence and hear arguments from the person and the Attorney General; and (3) determine whether probable cause exists to believe that the person is a sexually violent predator." *Id.* The suspected predator is guaranteed: "(1) to be represented by counsel; (2) to present evidence on the person's behalf; (3) to cross-examine witnesses who testify against the person; and (4) to view and copy all petitions and reports in the court file." S.C.Code Ann. § 44–48–80(B) (Supp.2006).

"If the court determines that probable cause exists to believe that the person is a sexually violent predator, the person must be taken into custody if he is not already confined in a secure facility," in order to await his or her commitment trial to be held. S.C.Code Ann. § 44–48–80(A) (Supp.2006). This trial will be heard by a judge unless the detainee or Attorney General requests a jury trial. The State has the burden to prove the person is a sexually violent predator beyond a reasonable doubt. *In the Matter of the Care and Harvey,* 355 S.C. 53, 60, 584 S.E.2d 893, 896 (2003); *see also* S.C.Code Ann. § 44–48–100 (Supp.2006).

The undisputed evidence presented to the circuit court at Brown's probable cause hearing established a clear pattern of sexually deviant behavior. Luculently, the existence of probable cause to believe he was a sexually violent person was validated.

■ "Probable cause is a flexible, common-sense standard." *State v. Bowie,* 360 S.C. 210, 220, 600 S.E.2d 112, 117 (Ct.App. 2004) (citing *Texas v. Brown,* 460 U.S. 730, 103 S.Ct. 1535, 75 L.Ed.2d 502 (1983)). The very term itself, "probable cause," does not import absolute certainty. *State v. Bennett,* 256 S.C. 234, 182 S.E.2d 291 (1971); *State v. Arnold,* 319 S.C. 256, 460 S.E.2d 403 (Ct.App.1995).

In looking at probable cause determining whether a search warrant should be issued, this court has stated that magistrates are to concern themselves with probabilities and not certainties. *State v. Fletcher,* 363 S.C. 221, 251, 609 S.E.2d 572, 587 (Ct.App.2005) (citing *Bowie,* 360 S.C. at 220, 600 S.E.2d at 117.) In regard to the lawfulness of an arrest, probable cause "merely requires that the facts available to the officer would 'warrant a man of reasonable caution in the

belief' " that an offense has been committed and that the accused committed it. *Brown,* 460 U.S. at 742, 103 S.Ct. 1535, 75 L.Ed.2d 502 (quoting *Carroll v. United States,* 267 U.S. 132, 162, 45 S.Ct. 280, 69 L.Ed. 543 (1925)). Probable cause may be found somewhere between suspicion and sufficient evidence to convict. *State v. Blassingame,* 338 S.C. 240, 250, 525 S.E.2d 535, 540–41 (Ct.App.1999) (citing *Thompson v. Smith,* 289 S.C. 334, 336–37, 345 S.E.2d 500, 502 (Ct.App. 1986), *overruled in part on other grounds by Jones v. City of Columbia,* 301 S.C. 62, 389 S.E.2d 662 (1990)).

 In the context of probable cause to believe someone to be a sexually violent predator, probable cause requires that the evidence presented would lead a reasonable person to believe and conscientiously entertain suspicion that the person meets the definition of a sexually violent predator. *See People v. Hardacre,* 90 Cal.App.4th 1392, 109 Cal.Rptr.2d 667, 673 (2001); *see also Matter of Hay,* 263 Kan. 822, 953 P.2d 666, 676 (1998) (a probable cause determination in a sexual predator case requires evidence sufficient for a person of ordinary prudence and action to conscientiously entertain a reasonable belief that the person in question is a sexually violent predator). Probable cause "does not demand any showing that such a belief be correct or more likely true than false." *Brown,* 460 U.S. at 742, 103 S.Ct. 1535, 75 L.Ed.2d 502.

 In a seven-month span in 2000 and 2001, Brown was discovered peeping into the same victim's windows on three separate occasions, the latter two incidents occurring after he had already been indicted for the first. Only two days after completing his first sentence, Brown was apprehended for recommitting his previous offense, this time attempting to break down the woman's door. He was imprisoned and shortly after being released from confinement was caught peeping in windows at the home of the previous victim's sister. During this arrest, Brown behaved violently. He resisted capture and kicked a police officer in the process. After being incarcerated for approximately two years for this offense, Brown was yet again found looking into someone's home.

 This chronology demonstrates a disturbing pattern, no sign of rehabilitation or remorse, and shows increasingly violent aspects of deviant behavior. A person's dangerous

propensities to commit future acts of sexual violence are the focus of the SVP Act. *See In re Care and Treatment of Corley,* 353 S.C. 202, 207, 577 S.E.2d 451, 454 (2003). There is Brobdingnagian evidence in the record indicating Brown suffers from voyeurism, a condition that involves recurrent, intense sexually arousing fantasies, sexual urges or behaviors involving the act of watching an unsuspecting person who is naked or in the process of disrobing, or engaging in sexual activity. *Diagnostic and Statistical Manual of Mental Disorders,* ("DSM–IV"), 532 (4th ed.1994). There is plenitudinous evidence to support a reasonable belief and suspicion that Brown meets the definition of a sexually violent predator. Brown: (1) has been convicted of a sexually violent offense; and (2) most probably suffers from a mental abnormality or personality disorder that makes the person likely to engage in acts of sexual violence if not confined in a secure facility for long-term control, care, and treatment.

That Brown was not violent, per se, toward any of his victims is of no consequence. The Code's definition of "sexually violent offense" lists fifteen specific criminal sexual offenses, as well as "any offense for which the judge makes a specific finding on the record that based on the circumstances of the case, the person's offense should be considered a sexually violent offense." S.C.Code Ann. § 44–48–30(2) (Supp. 2006). Many of the listed offenses do not require an overt act of violence. Section 44–48–30(2) includes the crimes of incest, buggery, committing or attempting a lewd act upon a child under the age of sixteen, and accessory before the fact to commit any of the other offenses enumerated in the section. Such offenses can unequivocally be accomplished without aggression, the use of great force, or having serious physical harm or injury result. It is apodictic that in order to qualify as a sexually violent offense, one's actions do not have to be violent in the sense of being physically injurious or destructive.

The determination was made by the sentencing judge that, under these particular facts and circumstances, Brown's eavesdropping/peeping tom amounted to a sexually violent offense. The facts and circumstances necessary to qualify his offense as a sexually violent one are indubitably present. Brown's intrusion violated the sanctity of these victim's homes.

His actions were unquestionably gravely injurious to the psyche and emotional well-being of these women. Furthermore, the repetitious nature of his behavior conforms to the definition of a predator. "Predatory" is defined as "showing a disposition to injure or exploit others for one's own gain." *Webster's New Collegiate Dictionary* 898 (1979).

Additionally, Brown committed acts of violence. In connection with two of his voyeurism incidents, he attempted to break down one victim's door, resisted arrest, and kicked a law enforcement official. Such behavior indicates that Brown's urges transcend the act of passively watching women through their windows at night.

A cursory reading of the transcript reveals the circuit court believed there was sufficient evidence to suggest Brown suffers from sexually deviant urges and needs therapy and psychiatric care. The court stated that Brown should "know he needs counseling based upon his prior behavior," and that the State's contention that Brown needed sex offender treatment was "likely to be true." Yet incredibly, the circuit court stated Brown's need for treatment "based upon his prior behavior and his difficulties" had "nothing to do with probable cause." In contrariety, the need for treatment to prevent repeat offenses is the central focus of the SVP Act, and thus is directly relevant to such probable cause determinations. In the face of those statements on the record, however, the circuit court inexplicably found no probable cause and dismissed the case.

The circuit court's finding of no probable cause is not supported by the evidence. It is in contraposition to the record as well as the court's stated recognition that Brown has deviant urges and needs treatment. If the circuit court's order is given viability, Brown will not be evaluated to determine the extent of his obvious sexually deviant urges and what treatment he needs to control them. Rather, he will remain free to terrorize other unsuspecting females, and will not receive the treatment he requires.

## CONCLUSION

We hold that the trial record irrefutably establishes probable cause within the mandate of the South Carolina Sexually

Violent Predator Act. We come to the adamantine and inescapable conclusion that the evidentiary record dictates **REVERSAL**.

This case is remanded to the circuit court for further proceedings in accordance with the South Carolina Sexually Violent Predator Act, including a psychiatric evaluation and a trial on the merits.

**ACCORDINGLY, THE ORDER OF THE CIRCUIT JUDGE IS REVERSED AND THE CASE IS REMANDED.**

KITTREDGE and SHORT, JJ., concur.